### Augustus Hopkins and Wife v. Travis G. Wright and Others.

Where the plaintiff sued for the recovery of certain property, claiming the same by ordinary allegation of ownership, and by amendment claimed that if her title was not sustained as alleged, she was nevertheless entitled to a widow's share of said property and of the other personal property of her deceased husband under the laws of Virginia, it was held that the amendment presented a new cause of action, subjecting the plaintiff to the payment of costs previously incurred, and such new cause of action to any defences which might have arisen since the commencement of the suit.

The Statute of 1852 requires the law of limitation to be specially pleaded in the answer, but whether this be done by demurrer or in the answer to the facts of the case, is immaterial. The whole of the defensive pleadings or allegations constitute the answer.

Quere, whether limitation would commence to run against the claim of a widow for her thirds, under Statutes declaratory of the Common Law, where she was pretermitted in the will of her husband, before a reasonable period for the payment of the debts of the estate had elapsed.

It appears that by the Statutes of Virginia, the husband has not the capacity to bequeath the whole of his personal estate from his wife, and that upon her petition, a will without adequate provision for the wife, shall, as to her, be declared null and void.

The rights of the widow under these Statutes, as against the will of a husband, are similar to those of an heir unjustly disinherited, as against the will of a

parent under our own Statute ; and the time allowed an (adult) heir to contest such will and contend for his rights, should be extended to a widow who, in our Courts, and under laws applicable to her case, contends for similar rights. That period is four years from the probate of the will.

Without further examining this point, there seems no reason why a pretermitted heir should not have at least as much time to, in effect, contest a will, as one who has been expressly disinherited ; or why a widow, under the laws of Virginia, pretermitted by her husband, should not, when suing in the Courts of this State, have the time allowed to an heir in a like suit, whether he be pretermitted or disinherited.

Where a widow sued for one third of the personal property of her deceased husband, under the laws of the State of Virginia, but failed to state that the domicil of her deceased husband was in that State at the time of his decease, and a demurrer to the petition was sustained on other grounds, which were not well taken, the judgment was reversed and the cause remanded, in order that the plaintiff might amend.

It would seem that the rule that the appellant or plaintiff in error must put his finger on the very error of the Court below, does not apply where the ruling is only sustainable on a ground not suggested in that Court, and which can probably be obviated by amendment, so that there is a probability that injustice has been done.

Appeal from Red River. The Reporter did not find the transcript in the Clerk's Office in this case.

*Sutton* and *Morrill & Dickson*, for appellants.

*J. A. W. Murray* and *J. T. Mills*, for appellees.

HEMPHILL, CH. J. Augustus Hopkins and Mary K. Hopkins, his wife, citizens of Virginia, in their original petition, sue Travis G. Wright and James D. Wortham for the recovery of about forty slaves, which they allege the said Mary was possessed of as her own property within two years prior to the institution of the suit ; that the defendants took possession of them on the first day of August, 1853, and refused to deliver them to the plaintiffs, though well aware that they are the property of the plaintiff Mary. The value of the use of said slaves is alleged, and judgment prayed for the negroes or their value,

and for the use of the same, and for such other and further re-
lief as they may be entitled to in justice, law or equity. The
petition was filed on the 4th April, 1855. The defendants, on
the 29th May, 1855, answered that they held the property des-
cribed in the petition as the executors of Timothy Wortham,
deceased, in trust for the children of the said Timothy, who
claim the same under the bequests of his will; that said will
was duly admitted to record at the July Term, 1853, of the
County Court of Red River County, Texas; that the order
admitting said will to record remains in full force, and they
pray that the legatees be made defendants to the suit. The
legatees, on the 27th Nov., 1855, filed their answer, alleging
that they hold under the bequests of the will of their father;
that the slaves were his property in his lifetime, and pray that
they may be quieted in their possession. On the 25th Febru-
ary, 1856, the plaintiffs filed their amended petition, and aver-
red that in the year 1832 the said Timothy Wortham and the
said Mary K., whose name then was Mary K. Smith, intermar-
ried in the State of Virginia, where they had previously re-
sided, and where they continued to reside till the year       ,
when the said Timothy removed to Red River County, Texas,
bringing with him the negroes set forth in the original petition;
that the said Mary K. inherited the said negroes from her
father and brother, and also real estate to the value of ten
thousand dollars, which was sold during the existence of the
marriage of the said Mary K. and Timothy, and the proceeds
applied to the purchase of other property. The plaintiffs de-
nied that the said slaves ever of right belonged to the said
Timothy; and they further averred that by the Laws and
Statutes of Virginia, in force at the execution of the said will
by the said Timothy, and at the time of his death, a wife for
whom no provision was made by the will of a husband, was
entitled to the one third part of his estate, and that the will of
the said Timothy having made no provision for the said Mary
K., she is entitled to one third part of said negroes and of other

personal property. They also averred that the domicil of the plaintiffs, as well as the family of the said Timothy, was in the State of Virginia ; and neither his children, wife or family ever resided in Texas. They allege the birth of children since the commencement of suit, and pray that the negroes be adjudged the property of Mary K.; but should they be decreed to belong to the estate of the said Timothy, that there be a decree for one-third of the said negroes, or their value, and for the one-third of other personal property, &c.

The defendants excepted to the amended petition for special causes, viz : 1st. That the amendment sets up a new and distinct cause of action. 2d. That it sets up a cause of action barred by the Statute of Limitations, as appears from the original petition.

And by way of answer the defendants pleaded limitation, adverse possession for two years, and general denial. The exceptions to the amended petition were sustained. The verdict was for defendants. Motion for new trial overruled and the plaintiffs appealed and assigned error,

1st. In striking out the amended petition.

2d. In excluding the plaintiffs' testimony.

3d. In the charge of the Court.

4th. In refusal of the charge requested by plaintiffs.

5th. In refusing a new trial.

At the trial, among other matters in evidence, the plaintiffs read from the Statutes of Virginia, to the effect that where a husband shall die and leave a will wherein no provision is made for his wife, the wife shall be entitled to one-third of the slaves for life and one-third of the surplus after the payment of debts. The defendants read from the same Statutes, that the Common Law of England is the law of Virginia, so far as the same does not conflict with the Constitution and Laws of the State. They also read the will of Timothy Wortham, and the Inventory of his estate. The will commenced as follows : " In the name of God, Amen : I, Timothy Wortham, of the County of Nottoway,

State of Virginia ; now at Virginia Point, Red River County, Texas." In the order admitting the will to probate, it was declared to be the last will and testament of Timothy Wortham, deceased, late of the County of Red River and State of Texas.

It was proven that the plaintiff, Mary K., inherited land from her father and brother, which her husband Timothy Wortham sold for about ten thousand dollars. She also inherited a large number of negroes, some of which her husband sold, and he conveyed ten to his wife to induce her to sign deeds for the land, and left Virginia for Texas with forty-two slaves.

The first and most important question, presented by the assignment, is the alleged error in sustaining the exceptions to the amended petition.

The first ground of exception is that the amendment sets up a new course of action.

The original petition does not specify the title by which the plaintiff Mary K. claims the property. The averments are merely that she was possessed of the slaves, as of her own property, within two years prior to the institution of suit ; that the defendants took possession on a day named, and refuse to deliver the said property. These averments claim the entire property in the whole of the slaves. They set up exclusive and absolute ownership. The amended petition alleges substantially, that the plaintiff, Mary K., having inherited the negroes from her father and her brother, is entitled to them in her separate right. So far there is no departure from the original cause of action. But the plaintiffs, in continuation, claim that the testator having made no provision in his will for the plaintiff Mary K., his surviving wife, she, under the laws of the State of Virginia, is entitled to one-third of the negroes and also one-third of whatever other personal property the said Timothy may have died seized and possessed of. This is manifestly a new ground or cause of action. By the original she claims the whole of the negroes as her own property.

By the amendment it is admitted that the negroes are the property of the deceased, but that she is entitled to one-third as a distributive share.    Her amendment is, in effect, a suit for partition of property of an estate held by her in common with others ; whereas her original claim was for the whole of the property, and by a claim paramount, antecedent to, and subversive of any right or title in the estate.    To admit a suit by one heir of an estate against others, asserting absolute title to the whole of the property, and, as is apparent, by a title adverse to the estate, to stand as a suit for the division of that estate, or to be equivalent to such suit, would be an anomaly not to be sanctioned by even the most liberal rules of procedure.    The amendment, so far as it sets up a claim to the one-third of Timothy Wortham's personal estate, must be regarded as a new cause of action.    But this, of itself, was no sufficient ground for the exclusion of the amendment.    Under the circumstances of this case, the only effect of the amendment should be to subject the plaintiff to costs previously incurred, and to entitle the defendants to the benefit of limitation, or other defences, which might in the meantime have accrued.

The second ground of exception is, that the cause of action, set up by the amendment, is barred by the Statute of Limitations, as appears from the original petition.    It is objected by the plaintiffs, that the Statute of Limitations cannot be set up by exception or demurrer.  But this position is not well taken. The Statute of 1852 requires the Law of Limitations to be specially pleaded in the answer, but whether this be done by demurrer or in the answer to the facts of the case is immaterial. The whole of the defensive pleadings or allegations constitute the answer, and limitation, wherever pleaded, is a part of the answer.

We will now examine whether the new cause of action is obnoxious to the plea of limitation.  The defendants were evidently of the impression that the two years limitation was applicable to this case.  But this is a misapprehension.  The pos-

session of the executors, claiming under the will, may be regarded as in a certain degree adverse to the plaintiffs, who claim adversely to such will. There might perhaps be a question of the commencement of the Statute, as against the plaintiffs, until after a reasonable period for the payment of the debts of the estate ; but, without contesting this position and waiving its discussion, and admitting that lapse of time, or limitation, began to operate against the plaintiffs from the date of the probate, it will be seen that sufficient time has not elapsed to bar the plaintiffs of their action.

In examining this point we will proceed on the supposition that such facts have been averred in the amended petition, as will bring the rights of the parties in the estate under the control of the Statutes of Virginia, in cases where no provision has been made by the will of a deceased husband for his surviving wife. From the case of Lightfoot's Ex'ors and others v. Colgin and Wife, (5 Munford, 42,) it appears that by several Statutes of Virginia, it has been declared, that where an inadequate provision has been made by the will of a husband for his wife, she may renounce the same, and shall be entitled to a greater or less share of his estate, its amount to be regulated by the number of his children. It is not necessary, in the present attitude of this case, to construe these Statutes, for the purpose of determining the exact portion to which the plaintiff Mary K. may be entitled. It is sufficient to say, that under them she can claim a share in the estate of which she cannot be deprived by the will of the husband. With regard to the widow's part in the estate of the husband, there is a striking similarity between the restrictions on the testamentary power under these Statutes, and those enforced by the Ancient Common Law in the time of Henry II. Blackstone, in his Commentaries, (Vol. 2, p. 492,) says that by this Ancient Common Law, a man's goods were to be divided into three equal parts : of which one went to his heirs or lineal descendants, another to his wife ; and the third was at his own disposal, or

if he died without a wife, he might then dispose of one moiety, and the other went to his children ; and so " *e converso*, if he had no children, the wife was entitled to one moiety, and he might bequeath the other ; but if he died without either wife or issue, the whole was at his own disposal. The shares of the wife and children were called their reasonable parts, and the writ *de rationabli parte bonorum* was given to recover them.

It appears that by the Statutes of Virginia, the husband has not the capacity to bequeath the whole of his personal estate from his wife ; and that upon her petition, a will without adequate provision for the wife, shall, as to her, be declared null and void. (Stat. 4 Anne, ch. 23 ; 3d Hen. Statutes at Large, 373.)

The rights of the widow, under these Statutes, as against the will of a husband, are similar to those of an heir unjustly disinherited, as against the will of a parent under our own Statute ; and the time allowed an heir to contest such will and contend for his rights, should be extended to a widow who, in our Courts and under laws applicable to her case, contends for similar rights. By the 13th Sec. of the Act concerning wills, (Hart. Dig. Art. 3263) an heir disinherited without just cause assigned and proven, may, within four years after probate of the will, have such will, as to him, declared void ; and the plaintiff Mary K., having been pretermitted in the will of her husband, in violation of law regulating such will, is entitled, by analogy, to the like period for the assertion of her rights as against such will. The special provision in the Statute of Wills harmonizes with the general provision of law, which declares that any person interested in a will may within four years after probate, institute suit to contest its validity. (Hart. Dig. Art. 1112) So that under the general law the plaintiff would be entitled to four years to contest the will, and by analogy under the special provisions of the Statute of Wills, she should have the like period before the bar by the Statute.

It is not necessary to discuss, in this case, the possible difference that might exist, as to the time of suit, between cases where there was an entire pretermission of the heir, and where there was a formal attempt at disinherison. Under the Spanish jurisprudence, the pretermission of an heir would, *ipso facto*, avoid the will as to him, without the necessity of a suit for *inoficiosidad*, viz : for the neglect of natural duty. Such suit was only necessary in cases of formal disinherison. In Portis v. Cummings, 14 Tex. R., 175, it is said that such suit would be barred in five years, and that there was no reason why, under the circumstances of that case, a pretermitted heir should not be barred also in five years, provided she had not by express or implied assent, been concluded previous to that time.

Without further examining this point, there seems no reason why a pretermitted heir should not have at least as much time to, in effect, contest a will, as one who has been expressly disinherited ; or why a widow, under the laws of Virginia, pretermitted by her husband, should not, when suing in the Courts of this State, have the time allowed to an heir in a like suit, whether he be pretermitted or disinherited.

We conclude then, that four years not having elapsed from the probate, the plaintiffs were not precluded from filing their amendment, and thus commencing the only suit which, under the facts, they could possibly maintain ; and that the Court erred in sustaining the special exceptions to said amendment.

But there was a more formidable objection to the amendment than any which was suggested by the special exception, and that is, there was no specific averment of the domicil of the testator at the time of his death ; nor are there any from which the domicil of the testator may be plainly and conclusively inferred. It is alleged that the testator removed to Red River county, Texas, bringing with him the negroes, &c. From this, his domicil might be presumed to be in Texas ; but it is also alleged that the domicil of his wife, children and family was in Virginia, and that neither of them resided in Texas.

From this the opposite conclusion might be drawn, that his domicil was in Virginia. I shall not refer to the inference as to domicil which might arise on the expressions at the commencement of the will, or from the terms of the order probating the will. These were introduced as evidence at the trial, and formed no part of the pleadings. Now it must be obvious at a glance, that the fact as to the domicil of the testator was of paramount importance in determining the right of succession to the personal estate of the deceased, and this controversy is exclusively in relation to personal estate. The rule is well settled, that the succession to the personal estate of a decedent, is to be governed by the law of the country in which he was domiciled at the time of his death. (1 Jarman on Wills, 2, 3 ; 3 Hazzard, 373 ;. Story Conflic. p. 49—55 ; 5 Ves. 757 ; Modern Probate of Wills, 329.) This point, as to domicil, was not brought before the District Court, and was not acted upon by that Court. It seems to have escaped the attention of the Court, the parties and their counsel, and was not suggested in the cause until after the close of the opening argument for the appellants in this Court, when the counsel for the appellees raised the question, and contended that by the pleadings it appeared that the domicil of the testator was in Texas, and that the widow, if entitled to any thing, could only be allowed the homestaad and other property exempt from forced sale. In the case of Harrison and others v. Nixon, 7 Peters, 483, the bill contained no averment of the actual domicil of the testator at the time of making his will, or at the time of his death, or at any intermediate period. The question in that case was as to the construction of the will, and it was deemed indispensable that the country by whose laws the will should be interpreted should be first ascertained. The Court was of the opinion that they could not dispose of the case without ascertaining where the testator's domicil was at the time of making his will and of his death, and the cause was remanded to the Circuit Court that suitable amendments might be made,

so that the elements of a full decision might be finally brought before the Court. In that case it was said that the point was not brought before the Circuit Court, and was not acted on by that Court; that it did not attract attention on either side in the argument there made. The case under consideration is the counterpart of the one we have cited, as to the want of a suitable averment of domicil. It is not perceived that in this case there would be a necessity for averments as to any other domicil of the testator except as to that at the time of his death, for by this the destination of his personal estate must be regulated. In the case cited, the domicil of the testator was either in England or in Pennsylvania; and it was contended, with great force, that an averment of domicil was unimportant, as the law and construction in both countries was the same. But in this case there is a wide difference between the laws of Virginia and Texas, as applicable to the actual condition of the property and the rights of the female plaintiff; and if the Court, in the case cited, deemed it important to a just disposition of the cause, that an amendment as to the averment of domicil should be made, how much more essential is the averment and fact of domicil in this case, as this is the leading fact upon which the ultimate recovery or defeat of the plaintiff must depend. Under the authority of the case cited, and that the cause may be decided upon its merits, we have concluded to remand the cause that there may be suitable amendments averring the fact of the domicil of the testator. Under this conclusion it is not necessary to notice other points made in the cause. It is ordered that judgment be reversed, and cause remanded for further proceedings in accordance with this opinion; and that appellants pay all the costs of this suit incurred previous to the filing of the amended petition.

Reversed and remanded.