SUSAN E. RIVERS, ADMINISTRATRIX, ETC., v. L. A. WASH-
INGTON.

1. The defense of limitation cannot be interposed by general demurrer; but by a special demurrer, or by special exceptions, it is available, when the petition itself shows the cause of action to be barred.

2. In 1850 a vendor of land executed his bond to make title to his vendee on the final payment, in three annual instalments, of the purchase money; and at the same time the vendor delivered possession of the land to the vendee, who thereafter held the actual and peaceable possession and enjoyment of the land until suit brought by the vendor's administratrix in 1866, for rescission of the contract and recovery of the land. *Held*, that in the absence of proof to the contrary, the presumption would be legitimate that the vendee had fully paid the purchase money and was entitled to an absolute deed. (Walker v. Emerson, 20 Texas, 707, and other cases, cited by the court.)

3. In the case of Crawford v. Bender, decided at the present term, (33 Texas, 745,) this court has already fully recognized and sustained the provision in the Constitution of 1869, (article twelve, section forty-three,) whereby it is declared that the statutes of limitation were suspended during the period between January 28, 1861, and the adoption of this Constitution by the Congress of the United States.

APPEAL from Colorado. Tried below before the Hon. L. Lindsay.

This case was submitted to the court below without a jury, and on the pleadings alone. The judge below sustained the defendant's general demurrer to the petition, and dismissed the case at the plaintiff's cost. He delivered an opinion in writing, from which the following statement of the case, as presented by the pleadings, is extracted:

It is alleged in the petition that there was a contract of sale of a tract of land made by R. J. Rivers, the plaintiff's intestate, to the defendant, L. A. Washington, some time in the year 1850, and that the defendant was placed in the possession of the land under said contract. Notwithstanding such contract of sale, and

delivery of possession under it in 1850, the personal representative of the vendor, upon the allegation of the failure of the vendee to pay the purchase money, according to the stipulations and conditions of such contract, brought suit in 1866 to try the title, and to recover the possession of the land, without accounting for, or giving any reason for the delay in instituting the suit. In addition to the prayer for the recovery of the possession of the land, there is superadded a prayer for a rescission of the contract, and a cancellation of the title bond which was executed by the vendor at the time of the delivery of the possession of the land to the vendee. The last prayer renders the case a blended proceeding in law and equity, and involves the application of principles of both branches of civil jurisprudence, in the determination of the rights of the parties.

After this statement of the case, the judge below proceeded to give his reasons for sustaining the defendant's demurrer; holding that the suit, though in form for the trial of the title, was, and could only be, a suit for rescission or for specific performance; and that, in a case of this character, where the vendee had been let into possession, the vendor could not, in virtue of the non-payment of the purchase money, declare the contract at an end, or re-sell the land, but must proceed in the courts, either for rescission or specific performance.

The plaintiff excepted to the ruling of the court below, and brings up the case by appeal.

*F. Barnard* and *R. L. Foard,* for the appellant.—Now, in the first place, we contend that, even if the petition of the plaintiff showed on its face that she was guilty of laches, and that her demand was stale, yet these objections could not be made by the defendant, or taken advantage of by him, by exceptions or general demurrer. They should have been set up in the answer, and pleaded specially. (See 9 Texas, 246; 3 Bro. C. C., 644; 1 Dan. Chan. Prac., 624.)

Limitation must also be pleaded; it cannot be taken advantage of by exception or demurrer. (See fifth section of act sixteenth of February, 1852, Dickinson v. Lott, 29 Texas, 172; Sesser v. Davis, 27 Texas, 656, 657.) These authorities clearly justify a reversal of the cause.

But a reversal on these grounds alone would be of little service to plaintiff, if Judge Lindsay's opinion be correct, that plaintiff's cause of action is barred by her laches, for this defense is pleaded in the last answer of defendant, filed ninth of March, 1870.

Judge Lindsay held that the suit was not brought for land, but for the unpaid purchase money due on the land; and that this was the only suit which the plaintiff could bring; that the vendor in an executory contract for the sale of land, where the vendee was placed in possession under the contract, cannot, as the law now is in this State, re-sell the land upon the failure of the vendee to comply with the terms of sale, or bring suit for the land. He must sue to rescind the contract or for specific performance.

Is this the law of Texas? We think not. The case of Browning v. Estes, 3 Texas, 462, first established in Texas the doctrine that when the vendee in an executory contract for the sale of land refuses to comply with the terms of the sale, the vendor can, in an action of trespass to try title, recover the land, and in that case Estes did recover the land from his vendee, Browning. The case last cited was recognized as undoubted law in Whiteman v. Castlebury, 8 Texas, 443; in Estes v. Browning, 11 Texas, 243 and 244, in which case are cited several New York cases; in Dunlap v. Wright, 11 Texas, 605; in Hill v. Still, 19 Texas, 765; Secrest v. Jones, 21 Texas, 132. Indeed, we know of no principle of law more firmly established than this, and if it has been overruled, we are ignorant when and where it was done.

Assuming, then, the law to be that suit in such cases can be sustained for the land, we contend that the suit is properly brought and is for the land,

The bond for title is described in the petition, and the court is asked to cancel this bond because the defendant had failed to comply with its terms; but the plaintiff merely anticipated in her pleadings the only defense that the defendant could make to the suit for the land; that is, that he claimed it by virtue of the bond and in compliance with its terms.

The defendant could not have claimed the land by virtue of his possession thereof, under any of the statutes of limitation, for the vendee's possession of land in an executory contract of sale is not adverse to the vendor, until he openly repudiates the title of his vendee, or does some act showing that he claims the land as against the vendor, and in opposition to his bond for title. (Yeary v. Cummins, 28 Texas, 94.) If it should be held even that, from the first of April, 1853, the possession of the land by defendant was adverse to the plaintiff, and that thirteen years elapsed from the commencement of this possession till the filing of this suit, still the defendant could only claim 640 acres of the upper quarter of the league. (Paschal's Digest, article 4624.) Whilst the suit is for the whole upper quarter, and the judgment is for the defendant which gives him the whole tract.

The suit being for the land, the defendant should reply as he did in the answer filed the seventh of October, 1868, the bond executed by the intestate of the plaintiff in 1850, and then the question would arise whether the defendant by failing to pay for the land according to the terms of his bond, had lost his right to pay for the land on account of his own laches and negligence. This question becomes immaterial, because the plaintiff, in the amended petition, is willing to make title to the land upon payment of the purchase money.

We contend that the defenses of laches, lapse of time and stale demand, are equitable defenses, and have no applicability to the case at bar. These defenses only arise where the plaintiff sues to enforce his equitable title against a party holding the legal title,

or where he asks that the legal title be decreed to him. ( *Vide*
Mosely v. Withers, 26 Texas, 728; 9 Texas, 144–146; Chadoin
v. Magee, 20 Texas, 475; Id., 30 Texas, 665.)  The cases cited
by us above, that is, Browning v. Estes, and the other cases affirm-
ing the doctrines laid down in that case, affirm the law to be, that
until the purchase money is paid, the vendor has the best title to
the land; and this holds, though the note and mortgage executed
for the purchase money be barred by limitation; and applying this
law to the case before us, we think it incumbent on Washington
to prove that he paid the purchase money according to his bond
for title.

But if Judge Lindsay be right, and the doctrine of laches and
stale demand applies to this case, is there any such laches, etc.,
as will defeat plaintiff's right?   The bond for title was executed
by the intestate of plaintiff on the fifteenth day of April, 1850,
and the land was to be paid for in three annual instalments, the
first due the fifteenth of April, 1851, and consequently the last
payment was due the fifteenth of April, 1853.  This suit was insti-
tuted the seventeenth of September, 1863.

None of the cases in our Reports upon the doctrine of laches
have fixed a shorter period than ten years as the bar, where the
owner of the equitable title sues for the legal title to land; and
we contend that the ten years have not elapsed in this case.  (See
Yeary v. Cummins, 28 Texas, 95.)

According to the ordinances of the convention of 1866, which
have been recognized by our Supreme Court, limitation ceased the
second of March, 1861, and did not commence again until the
first of September, 1866 ; consequently, according to these ordi-
nances, only about seven years and eleven months had run against
plaintiff's claim.

Our courts independent of the ordinances of the convention of
1866, have decided that limitation did not run during the late war,
and that it ceased at the beginning of the war, and commenced at

XXXIV—17

the opening of the courts in the fall of 1865; consequently, according to these decisions, only about eight years and ten months have run against plaintiff's claim.

That the convention of 1866 and the convention of 1870 had the power to extend the period of limitation, to change and alter them, we have no doubt.  Where there is no direct Constitutional prohibition, a State may pass retrospective laws, such as in their operation may affect suits pending, and give to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way of legal proceedings.  (Hepburn v. Curts, 7 Watts, 300; Shenley v. Commonwealth, 36 Penn. State, 57; Goster v. Essex Bank, 16 Mass., 246; Rich v. Flanders, 39 N. H., 325; Freeborn v. Smith, 2 Wall, 175.)

Our courts say that, as to the doctrine of laches, each case depends upon its own peculiar circumstances.  In Estes v. Browning, 11 Texas, though seventeen years had run against the bond, the Court said that Browning might yet tender the purchase money, and secure the land.  In Holman v. Cresswell, the bond was dated the thirtieth of December, 1840, and suit instituted August 23, 1852, a period of nearly twelve years.  (See 15 Texas, 394.)

*Darden & Delaney*, for the appellee.—Upon the trial the pleadings were read, showing the legal title in plaintiff's intestate, and the conveyance by bond to defendant.  Here the case rested, both parties declining to introduce proof, and the first question upon this state of facts is, upon whom lay the burden of proof?  The court below sustained the general exception of laches and stale demand, and for this ruling the authorities seem ample. (See DeCordova v. Smith, 9 Texas, 129; DeWitt v. Miller, 9 Texas, 239; Walker v. Emerson, 20 Texas, 707; Glasscock v. Nelson, 26 Texas, 150.)  In these cases courts of equity (and the equitable powers of the court are alone invoked in this case) rather act in analogy to the statute of limitations than govern

themselves by it; and their refusal to grant relief is the result of an unwillingness to grope in the dark after remedies rendered obscure by long lapse of time, especially when that obscurity is caused by the negligence of the plaintiff. (See Tinnen v. Mebane, 10 Texas, 246.) Upon these grounds the court below thought that the plaintiff had no claims upon an equitable tribunal. But the whole pleadings were before the court, and upon those pleadings all the presumptions were in favor of the defendant. The burden of proof was upon the plaintiff for two reasons: First, her claim that defendant had forfeited his right to the land, being grounded upon the negative allegation that he had not paid for the land, she was bound to furnish at least some proof of that negative. (1 Greenleaf Ev., § 78.) Second, defendant having held this land for sixteen years, claiming it as his own, a presumption almost, if not absolutely conclusive, arose that all matters had been settled between him and plaintiff's intestate, and that the land had long since been paid for. (See Emerson v. Walker, 10 Texas, 707.) In this last case, even the production of a note given by defendant was held not sufficient to rebut this strong presumption. It would be something extraordinary if after such a possession by defendant, so long continued under a claim of title, the simple unsupported assertion of plaintiff, that the land had not been paid for, could throw upon defendant the burden of opening again those remote transactions, and proving affirmatively the specific payments. If it could have that effect after sixteen years, why not after sixty? The burden of proof thus resting upon plaintiff, upon her failure to produce proof, the court was bound to give judgment for the defendant. (1 Greenleaf Ev., § 33.)

The authority upon which plaintiff seems to rest this case is Estes v. Browning, 3 Texas, and same case 11 Texas. That was the case of a defendant who had gone into possession under a title bond, paying a part of the money and giving his note for the remainder. When called on for payment he refused to pay, and

pleaded the limitation of four years against his notes. The court held that the contract of purchase was an entire contract; that payment of the money was a condition precedent to the passing of the title, and that the refusal, by defendant, to pay a balance admitted to be due, was an abandonment of the contract under which he held, and consequently he could neither hold the land nor recover back what he had paid. That case was widely different from the present. Here the defendant, instead of repudiating the contract, claims under it, insists that he has entirely fulfilled it, and the presumption is that he has done so.

There yet remains to be considered an insuperable barrier in the way of plaintiff's recovery. She asks a court of equity to rescind a contract and restore to her a tract of land. The pleadings show specifically that a very large amount, if not the whole, of the purchase money has been paid. Yet she asks the restoration of the land without any proposition to restore the money paid. She asks equity, but is not willing to do equity. (See Terrill v. DeWitt, 20 Texas, 256.)

OGDEN, J.—That the statute of limitation cannot be interposed to defeat an action, by general demurrer, becomes most manifest on comparing the character and form of a general demurrer with the statute of sixteenth of February, 1852, (article 4629, Paschal's Digest,) which provides that limitation shall be specially set forth in the answer, or it cannot be made available as a matter of defense. But it is believed that under the authority of Hopkins v. Wright, 17 Texas, 35, where it is held that the whole of the defensive pleadings or allegations constitute the answer, the statute of limitation may be set up by special exceptions or special demurrer, which may invoke the judgment of the court as to the legal rights of the parties as presented in their pleadings; or it may be specially set up by plea, or in the answer, technically so-called, to be determined by a jury from the facts of the case, under

Opinion of the court.

proper instructions from the court in regard to the law applicable to those facts.

To the original petition in this cause the defendant filed a general demurrer and a general denial, and afterward the plaintiff and defendant amended their pleadings several times, and finally the defendant, in his last amended answer, set up specifically the plea of limitation. Upon these pleadings the parties announced themselves ready for trial. They waived a jury, and submitted the cause to the court on the petition and answer, and the several amendments to the same. There seems to have been no testimony adduced on either side, and the court was asked to render judgment on the merits of the petition and answer. The court decided the cause on the general demurrer, sustaining the same because the plaintiff's cause was barred by her laches and the statute of limitation. From the peculiar manner in which this cause was submitted to the court, not on the demurrer, but upon the whole pleadings, we are not prepared to say that the plea of *laches*, stale demand and limitation were not properly before the court for investigation and decision. We are of the opinion that, so far as the parties to this cause are concerned, it is immaterial whether this suit was originally instituted for the recovery of the land specifically, or whether it was for the rescission of the contract of sale, or for specific performance; since the plea of laches or limitation might be set up after the lapse of the same time as a bar to either form of action. There has been no change of parties since the original contract of sale, and when the bond for title was executed the plaintiff's intestate put the defendant in possession of the land, who has since held the same by actual possession; and it is believed that under the authority of DeCordova v. Smith, 9 Texas, 129; DeWitt v. Miller, 9 Texas, 239; Walker v. Emerson, 20 Texas, 707; and Glasscock v. Nelson, 26 Texas, 150, this court would be fully authorized in presuming, and so deciding (without proof to the contrary), after the expiration

of ten years from the time the last payment became due, that the whole purchase money had been paid and settled, and that the vendee was entitled to an absolute deed.

We think that when a vendor has given a bond for title on the payment of the purchase money, and puts the vendee in possession, who continues to occupy as his own and improves the purchased property, and the vendor, knowing all this, rests quiet for the space of ten years after the purchase money has become due, he should be chargeable as one who had slept upon his right, (Walker v. Emerson, 20 Texas, 707,) and the same rule might be properly applied whether he sued for specific performance or a rescission of the contract, for in either case the presumption of payment would be equally strong and conclusive. But the Constitution of 1869, § 43, article 12, has adopted a new rule for computing the time when the statute of limitation has run as a bar to civil actions. That section declares that the statute of limitation did not run during the time between January, 1861, and the adoption of the Constitution. And this section was thoroughly and ably discussed in the case of Crawford v. Bender, at this term of this court, wherein the power and authority of the Convention to insert such a clause, and the binding force of the clause are fully recognized and sustained. With this clause of the Constitution recognized as in force, we are led to decide that the judgment of the court below, in sustaining the demurrer and plea of limitation, is erroneous, and for which error the judgment is reversed and the cause remanded.

Reversed and remanded.